2020 IL App (2d) 170453-B
No. 2-17-0453
Opinion filed August 18, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) ) | Nos. 10-CF-3<br>13-CF-1031<br>13-CF-1793 |
| JOEL D. SHELTON, | ) ) | Honorable<br>Donna R. Honzel, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hudson and Bridges concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant, Joel D. Shelton, contends that his trial counsel was ineffective for failing to file a motion to suppress, because a 911 call did not provide reasonable suspicion to stop his vehicle. Because the 911 caller reported that defendant was asleep at the wheel at an intersection, there was reasonable suspicion to stop defendant for driving under the influence. Thus, we affirm.[1]

_____

[1] We note that this opinion was originally filed on January 17, 2020. Although defendant had requested oral argument, we mistakenly never entered a written order dispensing with oral

¶ 2                                    I. BACKGROUND

¶ 3      Defendant was charged in the circuit court of Winnebago County with, among other things, one count of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(2)(E) (West 2010)).  Defendant opted for a jury trial.

¶ 4      Before trial, defendant moved *in limine* to bar admission of the arresting officer's testimony that he was dispatched to investigate a 911 report of someone "asleep behind the wheel at a light or intersection."  The trial court ruled that the officer could testify that he was dispatched because someone was stopped at the intersection but not because the driver was asleep behind the wheel.  The court explained that it was concerned about the implication that defendant was "drunk and sleeping behind the wheel like sometimes drunks do."

¶ 5      The following relevant facts were established at the trial.  On January 1, 2010, at about 9:55 p.m., Officer Stacey Beaman of the Rockford Police Department was dispatched to the

─────────────────────

argument. See Ill. S. Ct. R. 352(a) (eff. July 1, 2018).  Defendant then filed a petition for rehearing, contending, among other things, that we failed to enter a written order dispensing with his request for oral argument.  We denied the petition for rehearing and again neglected to enter an order disposing of defendant's request for oral argument.  Defendant, in turn, filed a petition for leave to appeal to the supreme court.  Our supreme court denied the petition for leave to appeal but entered a supervisory order directing this court to vacate its judgment and, before entering a new judgment, conduct oral argument.

We have since conducted oral argument.  We have also carefully reconsidered the arguments of the parties, both written and oral, the record, the applicable law, and our original opinion.  We stand by our original opinion as modified herein.

intersection of North Main Street and Riverside Boulevard. According to Officer Beaman, the dispatch "was in reference to a welfare check." The 911 caller stated that a vehicle was stopped at the intersection. As Officer Beaman drove to that location, the dispatcher advised her that the caller had reported that the vehicle was now moving and that the caller had followed it to a nearby Culver's restaurant. The caller described the vehicle and its license plate number.

¶ 6 When she arrived in the area, Officer Beaman saw the described vehicle in the Culver's drive-through lane. The vehicle then exited onto Bennington Road. Officer Beaman followed the vehicle and conducted a traffic stop. After driving about 25 to 30 feet on Bennington Road, the vehicle pulled back into the Culver's lot and parked.

¶ 7 As she approached the vehicle, Officer Beaman saw defendant, the only occupant, in the driver's seat. As she stood next to the driver's window, Officer Beaman smelled a strong odor of an alcoholic beverage on defendant's breath and burnt cannabis coming from the vehicle's interior.

¶ 8 Officer Beaman had defendant exit the vehicle and walk to the squad car. Defendant stumbled several times, requiring Officer Beaman to hold defendant's right arm to steady him. Officer Beaman had defendant sit in the squad car. While defendant sat in the squad car, he offered that he had been at a bar but had not consumed any alcohol. Defendant later admitted to another officer that he had drunk 2½ alcoholic beverages. Defendant refused to complete any field sobriety tests.

¶ 9 Officer Beaman then requested that a traffic investigator come to the scene. Several officers arrived and assisted in searching defendant's vehicle. Officer Beaman found a half-empty bottle of vodka next to the driver's seat and two clear plastic bags containing cannabis, one on the dash and the other between the front seats.

¶ 10    After several other witnesses testified, including defendant, the jury found defendant guilty of, among other things, aggravated DUI. The trial court sentenced defendant to eight years' imprisonment on the DUI conviction. Defendant, in turn, filed a timely notice of appeal.

¶ 11                                    II. ANALYSIS

¶ 12    On appeal, defendant contends that his trial counsel was ineffective for failing to file a motion to suppress. Specifically, defendant asserts that the 911 call, stating that defendant was asleep at the wheel at the intersection, was insufficient, standing alone, to provide reasonable suspicion to stop his vehicle. The State responds that the call provided reasonable suspicion to stop defendant for DUI.

¶ 13    Before we address the merits of defendant's contention, we note that defendant raises the ineffectiveness claim on direct appeal, as opposed to in a postconviction proceeding. Most often, a postconviction proceeding is the more appropriate mechanism for challenging the effectiveness of trial counsel because the defendant would have the opportunity to develop a record specifically addressing the merits of a motion to suppress. *People v. Henderson*, 2013 IL 114040, ¶¶ 21-22. However, where there are sufficient record facts to resolve the defendant's ineffectiveness claim, we will address it on direct appeal. *Henderson*, 2013 IL 114040, ¶¶ 22, 24.

¶ 14    Here, the parties agree that there are sufficient record facts to resolve defendant's ineffectiveness claim. They also agree as to the scope of the relevant facts. Although the record does not show whether the 911 caller provided additional relevant information, the parties agree that the caller reported that defendant was asleep at the wheel while sitting in his vehicle at an intersection. Defendant relies exclusively on that fact in arguing that there was no reasonable suspicion to stop him. More importantly, the State does not suggest that there was any other

information provided by the caller that was relevant to whether there was reasonable suspicion to stop defendant.[2] Thus, we will address the issue.

¶ 15    To establish ineffective assistance of counsel, a defendant must show that (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defendant in that, but for counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *People v. Houston*, 226 Ill. 2d 135, 144 (2007).  Decisions involving trial strategy generally will not support an ineffectiveness claim. *People v. Lindsey*, 324 Ill. App. 3d 193, 197 (2001).

¶ 16    Whether to move to suppress evidence generally is a matter of trial strategy. *People v. Little*, 322 Ill. App. 3d 607, 611 (2001).  Courts will presume that trial counsel had a legitimate strategy for filing or not filing a motion to suppress. *Little*, 322 Ill. App. 3d at 611.  To overcome that presumption and prevail on a claim of ineffectiveness for failing to file a motion to suppress, a defendant must show that (1) the unargued motion to suppress would have succeeded and (2) there is a reasonable probability that the outcome of the trial would have been different had the evidence been suppressed. *Little*, 322 Ill. App. 3d at 611.  If filing a motion to suppress would have been futile, then the failure to do so will not constitute the ineffective assistance of counsel. *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

------

[2] We note that the State has not argued that there was some other basis for stopping defendant, such as community caretaking.  See *People v. McDonough*, 239 Ill. 2d 260, 268-75 (2010).

¶ 17    Here, defendant relies solely on *Navarette v. California*, 572 U.S. 393 (2014), for his argument that the 911 call did not provide reasonable suspicion to stop his vehicle. The State, in turn, contends that *Navarette* supports the stop. Thus, we will focus on the import of that case.

¶ 18    In *Navarette*, a 911 caller reported having recently been run off the road by another vehicle. *Navarette*, 572 U.S. at 395. After holding that the call was reliable, the United States Supreme Court addressed whether the information provided by the call constituted reasonable suspicion to stop the vehicle. *Navarette*, 572 U.S. at 400-01. In doing so, the Court noted that it must determine whether the 911 report created reasonable suspicion of an ongoing crime such as drunk driving, as opposed to an isolated episode of past recklessness. *Navarette*, 572 U.S. at 401.

¶ 19    The Court emphasized that the commonsense approach of reasonable suspicion depends on the factual and practical considerations of everyday life upon which reasonable and prudent people, not legal technicians, act. *Navarette*, 572 U.S. at 402. The Court distinguished certain driving behaviors that indicate drunk driving from other traffic infractions that are too tenuously connected to drunk driving to give rise, alone, to reasonable suspicion to stop a vehicle. *Navarette*, 572 U.S. at 402. The Court added that a report of driving behavior that suggests decreased vigilance, impaired judgment, or some combination of those drunk-driving cues gives rise to reasonable suspicion that the driver is under the influence. *Navarette*, 572 U.S. at 401. Ultimately, the Court validated the stop.

¶ 20    Applying the reasoning of *Navarette*, we conclude that the 911 report that defendant was asleep at the wheel at an intersection provided reasonable suspicion to stop defendant. Clearly, a driver who falls asleep at an intersection is experiencing decreased vigilance and impaired judgment commonly associated with drunk driving. That is particularly so at 10 p.m., not an unusually late hour. Sleeping at the wheel at an intersection also creates several dangers associated

with drunk driving. For instance, a vehicle unexpectedly stopped at an intersection could cause other drivers to suddenly swerve to avoid the stopped vehicle, thereby colliding with other vehicles or leaving the roadway and striking a pedestrian or object. As defendant's reported conduct was a significant indicator of DUI, the report gave Officer Beaman reasonable suspicion that defendant committed the offense. See *Navarette*, 572 U.S. at 403.

¶ 21    Although the reported behavior might have been explained by, for example, extreme tiredness or prescribed medication, the Supreme Court has consistently recognized that reasonable suspicion need not rule out the possibility of an innocent explanation. *Navarette*, 572 U.S. at 403. Indeed, even the reported driving behavior in *Navarette*, running another motorist off the road, was subject to possible innocent explanations. For example, the offending driver might have suddenly swerved to avoid an animal or other hazardous object in the road, or carelessly lost control of his vehicle because of a momentary lapse of attention, such as changing radio stations, eating something, or looking at a cell phone. Nonetheless, as long as it was reasonable to infer that the driver ran the other motorist off the road because he was under the influence, the officer had a proper basis to stop the vehicle and investigate the cause. The same is true here.

¶ 22    Nor did the absence of additional suspicious conduct before the stop dispel the reasonable suspicion of drunk driving. See *Navarette*, 572 U.S. at 403. Indeed, an officer who already has reasonable suspicion need not surveil a vehicle at length in order to personally observe suspicious driving. *Navarette*, 572 U.S. at 403. Further, once reasonable suspicion of drunk driving exists, the reasonableness of the officer's decision to stop the suspect does not depend on the availability of less-intrusive investigative techniques. *Navarette*, 572 U.S. at 403-04. Thus, because the 911 call provided reasonable suspicion of drunk driving, Officer Beaman was justified in stopping defendant at the first opportunity.

¶ 23    Because the 911 call provided reasonable suspicion to stop defendant's vehicle, a motion to suppress would not have succeeded.  Thus, trial counsel was not ineffective for failing to file such a motion.

¶ 24                              III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 26    Affirmed.

## No. 2-17-0453

| | |
|---|---|
| **Cite as:** | *People v. Shelton*, 2020 IL App (2d) 170453-B |
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 10-CF-3; the Hon. Donna R. Honzel, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Erin S. Johnson, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Marilyn Hite Ross, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Ivan O. Taylor Jr., of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |